GRAF v. NATIONAL SURETY CO. OF NEW YORK.

(Supreme Court, Appellate Term. January 5, 1911.)

INSURANCE (§ 333*)—THEFT INSURANCE—CHANGING CIRCUMSTANCES OF RISK.
  Within a policy insuring against loss by burglary or theft the property in a dwelling, conditioned to be void if, without insurer's written consent, the conditions or circumstances of the risk are changed, the making of extensive repairs and alterations of the house, requiring a long time for their completion, and involving the presence of numerous workmen throughout the house, materially changes the circumstances as to the risk of theft.

  [Ed. Note.—For other cases, see Insurance, Dec. Dig. § 333.*]

  Gavegan, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Fifth District.

Action by Joseph L. Graf against the National Surety Company of New York. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before GIEGERICH, BRADY, and GAVEGAN, JJ.

Joseph T. Magee, for appellant.

Rosenthal & Steckler (David Steckler, of counsel), for respondent.

---

GIEGERICH, J. The action is to recover upon a policy of insurance against loss by burglary, theft, or larceny. The plaintiff, with his family, occupied a four-story and basement dwelling house in the borough of Manhattan, New York City, the premises covered by the policy. In the month of April, 1909, they went to Europe, leaving three servants in charge of the house. They returned in the following July. On August 14th of the same year, the plaintiff and his wife went to Asbury Park. Before leaving the house, the wife wrapped her fur coat in a bath robe, and hung it, so wrapped, in a closet in her bedroom, locking the door of the closet, but leaving the key in the door. On her return from Asbury Park, on August 19th, she found the closet open, the bath robe on the floor, and the coat missing. She made an exclamation of surprise, immediately called a painter, who was working in the house, and told him of the loss, and at once called her husband on the telephone and communicated the fact to him.

The policy contained a provision that it should be void if the conditions or circumstances of the risk were changed without the written consent of the defendant, indorsed on the policy, and the principal defense was that the policy had been avoided by such a change. This is the only defense that requires consideration here, for we are not impressed by the further contention by counsel for the defendant that there is no evidence of theft. The clause relating to such proof, cited in his brief, does not appear in the policy.

It was shown at the trial that very extensive alterations and repairs had been made to the premises in question during the period covered by the policy and prior to the time when the family left for Asbury Park. If, therefore, the policy was thereby avoided, it had ceased to be binding upon the defendant company at the time when the loss happened. It is apparent from the testimony that the work involved in the repairs and alterations of the house extended over a considerable period of time, beginning while the plaintiff and his wife were in Europe, and being still in progress when they left for Asbury Park. The whole house was apparently newly floored and decorated, and there were eight or nine workmen engaged in the work. The nature and extent of the work done can be seen from extracts from the plaintiff's testimony:

"Q. Now, at the time there were some repairs being made to your house? A. I had the whole house overhauled. Q. What was the extent of this overhauling? A. I had the house frescoed and painted. Q. On the walls and ceilings? A. From top to bottom. I had new floorings put in through the whole house. Q. And that work was going on during that week? A. Yes, sir. Q. And the work was going on during your absence? A. Yes, sir. * * * Q. When did these renovations you have spoken about begin? A. They began when we came back from Europe. In fact, we got ready for what they call the preliminary work, cleaning room after room, before we came back from Europe, and when I and my wife came back the real work began. * * * Q. Immediately afterwards the workmen began their work there? A. Mr. Fuchs had charge throughout the house when I went to Europe. Q. He was what? A. The painter and decorator. Q. There was painting and decorating of the entire building? A. The whole house was fixed up. * * * Q. A general overhauling of the entire building? A. Yes, sir. * * * Q. Were the painters at work in all the rooms of the house? Did you have all the rooms of the house fixed up? A. Yes, sir; the whole house."

The plaintiff further testified that he had not given notice to the defendant of the fact that any of this work was being done because, in answer to his inquiry, his insurance broker had told him that it was not necessary to give such notice. The defendant offered no evidence. Both sides moved for the direction of a verdict, whereupon the trial judge discharged the jury and reserved decision. He later gave judgment for the plaintiff.

If effect is to be given to the express agreement of the parties, as stated in the policy, the judgment must be reversed. It certainly cannot be held that repairs and alterations of the house, of the extent here described, requiring a long period of time for their completion, and involving the presence of numerous workmen throughout the house, did not materially change the circumstances of one of the risks insured against, namely, the risk of theft. Under the policy, the defendant company was entitled to notice of such a change in the circumstances affecting the risk, and to an opportunity to say whether or not it would continue to carry it.

The judgment should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.

BRADY, J., concurs. GAVEGAN, J., dissents.